Filed 5/9/23 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| OSCAR J. MADRIGAL et al., | C090463 |
| Plaintiffs and Respondents, | (Super. Ct. No. S-CV-0038395) |
| v. | |
| HYUNDAI MOTOR AMERICA, | ORDER MODIFYING MAJORITY OPINION AND DENYING REHEARING [CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on April 11, 2023, be modified as follows:

1.      In the first full sentence in the third line on page 22 of the majority opinion that begins "Indeed, Hyundai explains," delete the word "explains" and insert the word "argues" in its place.

2. Delete the last paragraph starting on page 22 of the majority opinion that begins "Plaintiffs rejected reasonable offers," and insert the following paragraph in its place:

Plaintiffs rejected reasonable offers to compromise early in the case, creating a known risk that they might have to forfeit costs and attorney fees from the date of the operative section 998 offer if they failed to obtain a more favorable judgment later. When they ultimately agreed on the brink of trial to accept a monetary settlement in a principal amount that was less than Hyundai's second section 998 offer, and further agreed to dismiss their complaint with prejudice, they arguably "fail[ed] to obtain a more favorable judgment" within the meaning of section 998, subdivision (c). The trial court should therefore have applied that statute when assessing the costs and attorney fees recoverable by the parties. On remand, the trial court may consider the parties' arguments regarding the validity of the offer, whether the offer was more favorable than the judgment obtained by plaintiff, and any other arguments that may flow from the application of section 998. Our opinion does not foreclose the parties from advancing any such contentions below.

3. On page 27 of the majority opinion, delete the paragraph under the heading "DISPOSITION" and insert the following paragraph in its place:

The order is reversed and the matter is remanded to the trial court to determine the amount of costs and attorney fees recoverable, consistent with this opinion. Hyundai shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (5).)

This modification changes the judgment.

The petition for rehearing is denied.

BY THE COURT:


      DUARTE        , J.


      KRAUSE        , J.


For the reasons stated in my dissent, I continue to disagree with the disposition as modified and would grant the petition for rehearing.


      ROBIE        , Acting P. J.

Filed 4/11/23 (unmodified opinion)
Reposting correct version

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----


| | |
|---|---|
| OSCAR J. MADRIGAL et al., | C090463 |
| Plaintiffs and Respondents, | (Super. Ct. No. S-CV-0038395) |
| v. | |
| HYUNDAI MOTOR AMERICA, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Placer County, Michael W. Jones, Judge. Reversed.

Theta Law Firm, Soheyl Tahsildoost, Kainoa Aliviado; SJL Law and Julian G. Senior for Defendant and Appellant.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Appellant.

Knight Law Group, Roger Kirnos; The Altman Law Group, Bryan C. Altman; Law Office of Michael H. Rosenstein, Michael H. Rosenstein; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Joseph V. Bui for Plaintiffs and Respondents.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.


1

Plaintiffs Oscar J. and Audrey M. Madrigal (plaintiffs) sued defendant Hyundai Motor America (Hyundai) under California's automobile lemon law. Early in the case, Hyundai made two offers to compromise under Code of Civil Procedure section 998,[1] both of which were rejected. Litigation continued. After a jury was sworn in, plaintiffs settled with Hyundai for a principal amount that was less than Hyundai's second section 998 offer. The parties elected to leave the issue of costs and attorney fees for the trial court to decide upon motion. Under the settlement agreement, once the issue of costs and attorney fees was resolved and payment was made by Hyundai, plaintiffs would dismiss their complaint with prejudice.

This case presents the novel question of whether section 998's cost-shifting penalty provisions apply when an offer to compromise is rejected and the case ends in settlement. Under the facts of this case, we hold that it does and therefore reverse the order of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs sued Hyundai on September 26, 2016, under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq. (Song-Beverly Act)) alleging breaches of express and implied warranties arising out of plaintiffs' purchase of an allegedly defective 2012 Hyundai Elantra for a total cash price of $24,172.73. Approximately five weeks later, on November 4, 2016, Hyundai made an initial offer to compromise under section 998, subdivision (b). Specifically, Hyundai offered to pay plaintiffs (1) the total amount paid by plaintiffs for the vehicle at issue, including incidental or consequential damages, as well as "an amount equal to one times the amount of actual damages," or (2) a fixed amount of $37,396.60, plus attorney fees of

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

$5,000 or, alternatively, an amount of fees determined by the trial court upon motion. Plaintiffs allowed this offer to expire without accepting it.

On May 26, 2017, Hyundai made a second offer to compromise under section 998, again offering the total amount paid by plaintiffs for the vehicle, including incidental or consequential damages, plus "an amount equal to one times the amount of actual damages." Alternatively, plaintiffs could elect to accept a flat sum of $55,556.70, plus attorney fees of $5,000, or as determined by the trial court upon motion. Plaintiffs also allowed this offer to expire without accepting it. Litigation continued.

On January 3, 2019, the first scheduled day of trial, the parties reviewed their motions in limine with the court and the trial judge urged the parties to explore settlement. To help facilitate settlement talks, plaintiffs specifically requested tentative rulings on Hyundai's motions in limine to exclude certain consequential, incidental, and cover damages. The court advised plaintiffs that those motions tentatively would be granted and then took a recess.

When the trial court went back on the record, it noted that the jury had been sworn, at which point Hyundai's counsel informed the judge that the parties "may have come to a resolution." Following a discussion off the record, the parties' attorneys agreed to recite the terms of the stipulated settlement on the record pursuant to section 664.6,[2] explaining that these recitals would "be the entirety of the settlement release in terms of the agreement."

Hyundai's counsel verbally presented the terms of the stipulation for settlement to the trial court, as follows: (1) Hyundai would pay plaintiffs $39,000; (2) there would be

---

[2]     Subdivision (a) of section 664.6 provides: "If parties to pending litigation stipulate . . . orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

3

no surrender of the vehicle because plaintiffs no longer owned it; (3) plaintiffs would release Hyundai and the selling dealership of "any claims that arise out of or [relate] to the facts and circumstances described in the complaint or relating to the sale of the vehicle or relating to the service and repair history of the subject vehicle"; (4) the settlement would be subject to section 664.6; and (5) plaintiffs could seek "fees by motion," to "be filed within six months" of the date of settlement. Hyundai's counsel added that plaintiffs' counsel wanted "to make sure that the payment be made and then . . . dismissal with prejudice would only happen after payment of the restitution to the Plaintiffs and the fees which will be [by] motion [for] fees and costs."

The trial court then confirmed the terms of the settlement with the parties, their representatives, and attorneys. No mention was made during the settlement colloquy of the effect, if any, of Hyundai's section 998 offers upon the recovery of costs or fees, nor was there any discussion of what defenses Hyundai could raise in response to the motion for costs and attorney fees.

Plaintiffs thereafter filed their motion for costs and attorney fees as prevailing parties under section 1032, subdivision (a)(4), and the Song-Beverly Act (Civ. Code, § 1794, subd. (d)), seeking $207,438.75 in fees (comprised of $138,292.50 in base fees with a lodestar enhancement of $69,146.25), and $20,865.83 in costs and expenses, totaling $228,304.58.

In response, Hyundai filed a motion to strike or, in the alternative, tax plaintiffs' costs and expenses. It argued, among other things, that plaintiffs' ultimate settlement was for $16,556.70 less than its second section 998 offer. In Hyundai's view, it was "undisputed that Plaintiffs[] failed to obtain a more favorable judgment than the Second 998 Offer." It thus sought "to have at least all costs incurred after the Second 998 Offer (dated May 26, 2017) stricken." In effect, Hyundai asked the trial court to strike or tax $20,242.88 in plaintiffs' costs and expenses, leaving only $622.95 recoverable. In the

4

alternative, Hyundai asked the trial court to tax plaintiffs' costs as unreasonable and unnecessary, providing specific line-item analyses.

Hyundai also filed an opposition to the motion for attorney fees. As relevant here, Hyundai argued that because plaintiffs failed to obtain a judgment more favorable than Hyundai's second section 998 offer, plaintiffs could not recover any costs or fees incurred after May 26, 2017, the date of that offer.

In an order filed on July 18, 2019, the trial court summarily rejected Hyundai's section 998 arguments, explaining that "[t]he purpose of the statute is to encourage settlement of lawsuits prior to trial. [Citation.] In this case, the parties settled the case prior to trial, and as there was no trial, no judgment or award was rendered. Accordingly, . . . section 998 does not apply."

After reviewing the billing statements submitted by plaintiffs from "three separate law firms and 16 separate attorneys," the trial court said that it "observed numerous instances of duplicative billing, billing for tasks that do not appear reasonably necessary to the conduct of the litigation, and unreasonable amounts of time spent on various tasks." It went on to observe that "[t]his particular case did not involve overly complex issues, or unique procedural demands. Litigation of this case involved limited written discovery, depositions, and two motions to strike. . . . As noted by the parties, the law firms involved in this action have tried multiple cases against one another, with each following a similar pattern. The same basic motions in limine, exhibit lists, and other pleadings are used." It ultimately declined to apply a multiplier and reduced substantially the base amounts sought, awarding plaintiffs just $81,142.50 in attorney fees and $17,681.05 in costs and expenses.

Plaintiffs served by mail on August 1, 2019, and filed on August 5, 2019, a "notice of entry of judgment or order" form. On September 23, 2019, Hyundai filed a notice of appeal and, after a number of briefing extensions requested by the parties, as well as

supplemental briefing solicited by this court, the case was fully briefed on May 13, 2022 and argued on February 24, 2023.

## DISCUSSION[3]

The principal issue before us is whether the penalty provisions of section 998 apply when a case ends, not with a judgment after trial, but with a settlement that provides for the payment of money by defendant in exchange for a dismissal with prejudice by the plaintiff.  Before we address the merits, however, we consider the threshold question of whether we have jurisdiction to entertain this appeal.

### I

### *Appealability*

"An appealable order or judgment is a jurisdictional requirement.  [Citations.] 'The right to appeal is wholly statutory.  [Citation.]  . . . [S]ection 904.1 lists appealable judgments and orders.'  [Citation.]"  (*Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1105.)  Orders awarding attorney fees and costs often are appealable under section 904.1, subdivision (a)(2), but not "until the final judgment in the matter has been entered."  (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297.)

---

**3**     Plaintiffs have filed two requests for judicial notice.  The first request is ruled upon as follows:  (1) granted as to exhibits B through E; and (2) denied as to exhibit A. The second request is ruled upon as follows:  (1) granted as to exhibits 4, 5 and 6; and (2) denied as to exhibits 1, 2 and 3.  "In determining the legislative intent underlying the passage of a bill, courts may consider the motive or understanding of the author of the bill or other individual legislator if that 'legislator's opinions regarding the purpose or meaning of the legislation *were expressed in testimony or argument to either a house of the Legislature or one of its committees . . . .*'  [Citation.]"  (*South Bay Creditors Trust v. General Motors Acceptance Corp.* (1999) 69 Cal.App.4th 1068, 1079, italics added.) Letters from a bill's author to the Governor are not properly considered.  (See *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161, fn. 3.)  Exhibits A, 1, 2 and 3 are not proper subjects of judicial notice under this authority.

In its notice of appeal, Hyundai stated that it was appealing the trial court's order on fees and costs on the ground that it constitutes an order after judgment under section 904.1, subdivision (a)(2).[4]  Although plaintiffs filed a "notice of entry of judgment or order" on August 5, 2019, no judgment appears yet in the record.

The status of the judgment in this case is a bit muddled owing to the way in which the parties agreed to settle the dispute.  Although all the legal issues in the complaint were resolved by the stipulated settlement, the parties agreed that the request for dismissal of the complaint with prejudice (a common proxy for final judgment) would be filed only *after* payment of the $39,000 settlement amount *and* any fees and costs awarded by the trial court.  Since any order awarding fees and costs was almost certain to be challenged on appeal, that meant the filing of the request for dismissal would effectively be delayed until after appellate review of the fees and costs order is complete.  This set up the "catch-22" in which we find ourselves, with a final determination on the merits, but no judgment or dismissal with prejudice on file.

In supplemental briefing,[5] Hyundai pivoted away from section 904.1 to argue that the challenged order is an appealable collateral order, citing *Apex LLC v. Korusfood.com*

---

[4]  Hyundai also paradoxically checked boxes indicating that its appeal was taken in accordance with the "premature notice of appeal" provisions of California Rules of Court, rule 8.104(d)(1) and (2).

[5]  Hyundai did not address the issue of appealability until invited to do so by this court.  Hyundai is admonished for failing to address jurisdiction in its opening brief. (Cal. Rules of Court, rule 8.204(a)(2)(B) [an opening brief must "[s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable"].) Counsel also is cautioned against citing unpublished California appellate opinions, as it does on page 27 of appellant's reply brief.  (Cal. Rules of Court, rule 8.1115(a).)  Finally, it is inappropriate for Hyundai's counsel to personally attack plaintiffs' counsel's motives in rejecting the company's section 998 offers (or the alleged motives of all plaintiffs' attorneys in general who litigate cases under the Song-Beverly Act), as it does in its reply brief.  The only question before us is the proper interpretation and application of section 998.

7

(2013) 222 Cal.App.4th 1010, 1015-1016 [in the absence of a judgment, order granting attorney fees found directly appealable under the collateral order doctrine].)  Plaintiffs agree with Hyundai on this point, and both sides urge us to review the order.  We agree that, in view of the unique terms of this settlement, which does not require plaintiffs to file a dismissal prior to payment of fees and costs despite the parties' final resolution of issues in the trial court, we may properly review the challenged order under the collateral order doctrine.

"[When] there is no final judgment . . . , the issue is whether the order from which the appeal has been taken fits within an exception to the one final judgment rule codified in . . . section 904.1." (*Sese v. Wells Fargo Bank N.A.* (2016) 2 Cal.App.5th 710, 714-715.)[6]  "A recognized exception to the 'one final judgment' rule is that an interim order is appealable if:  [¶]  1.  The order is collateral to the subject matter of the litigation, [¶] 2.  The order is final as to the collateral matter, and [¶] 3.  The order directs the payment of money by the appellant or the performance of an act by or against appellant. [Citations.]" (*Marsh v. Mountain Zephyr, Inc., supra*, 43 Cal.App.4th at pp. 297-298.)  In short, the collateral order doctrine allows appeal of "an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)

Here, the trial court's order on attorney fees and costs meets all the requirements of the collateral order doctrine.  It qualifies as a "final determination" because " 'further

---

**6**     Under the one final judgment rule, " 'an appeal may be taken only from the final judgment in an entire action.' " (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 921, quoting *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 153.)  " 'The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.)

judicial action is not required on the matters dealt with by the order.' " (*Apex LLC v. Korusfood.com, supra*, 222 Cal.App.4th at p. 1016.)  The issue of attorney fees is a "collateral matter" because it is " 'distinct and severable' from the subject matter of the underlying litigation" (*ibid.*), which involved plaintiffs' entitlement to recovery under the Song-Beverly Act.  "Finally, by awarding attorney fees [and costs] . . . , the order directs the payment of money." (*Ibid.*)  We therefore find jurisdiction on this basis.

In finding jurisdiction under the collateral order doctrine, we reiterate that the fees and costs ruling is only an "interim" order for purposes of appealability due to the peculiar timing created by the settlement agreement.  The trial court's order granting fees and costs would plainly be appealable under section 904.1, subdivision (a)(2) had it been issued after dismissal of the complaint with prejudice.  However, owing to the terms of this specific settlement, a request for dismissal with prejudice will not be filed until costs and fees are not only awarded, but paid.  At that point, however, plaintiffs will be obligated to file the request for dismissal.  Alternatively, if Hyundai fails to pay plaintiffs what they are owed (or plaintiffs fail to dismiss the action), the parties may invoke their remedies under section 664.6 to enforce the settlement terms.  We see no reason to refuse to address the merits based on this technicality, when dismissal with prejudice, or, in the case of nonperformance, entry of judgment, is a certainty.  To do so would require Hyundai to pay fees and costs to plaintiffs, plaintiffs to dismiss the action, and then Hyundai to refile the same appeal that is presently before us, which may in turn trigger refunds or additional payments.[7]  As the collateral order doctrine provides us with a clear path to jurisdiction in view of the procedural quandary created by the settlement, and the

---

[7]     Such an approach could also potentially contravene the terms of the parties' settlement agreement, as it would require dismissal of the case *before* any additional payment of costs and fees that may be ordered following remand after appeal.

9

parties agree to its application, we find jurisdiction under the doctrine and turn to the merits.

II

*Section 998's Application to Settlements*

The issue presented here is whether the trial court erred in ruling that section 998 does not apply when a case ends in settlement. This appears to be a question of first impression. "Because this issue involves the application of law to undisputed facts, we review the matter de novo. [Citation.]" (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 (*Martinez*).)

On appeal, Hyundai raises two principal arguments as to why the trial court's fees and costs order should be reversed: (1) the stipulation to settlement under section 664.6 "calling for dismissal of the entire action with prejudice constituted a 'judgment' within the meaning" of section 998; or, alternatively, (2) the "voluntary dismissal of the entire action with prejudice constitutes a failure by [plaintiffs] to obtain a judgment or award of any kind," triggering the cost-shifting provisions of section 998. The Civil Justice Association of California filed an amicus curiae brief in favor of Hyundai's position.

Plaintiffs counter: (1) section 998 does not apply in cases that resolve by way of settlement; (2) regardless, Hyundai cannot show the second section 998 offer was more favorable than a nonexistent judgment or award, or a judgment or award that contains subjective, nonfinancial benefits; and (3) section 998 provides no basis for reducing attorney fees or costs in a case brought under the Song-Beverly Act in which a plaintiff prevails.[8] Consumer Attorneys of California filed an amicus curiae brief in favor of plaintiffs' position.

---

[8]     We can dispatch the third argument quickly. In *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, this court considered whether the defendant-seller's section 998 offer affected the costs and attorney fees recoverable by the plaintiff under

10

We agree with Hyundai that the terms of the stipulated settlement under section 664.6 constituted a "judgment" within the meaning of section 998, subdivision (c) and that the trial court should have examined the parties' entitlement to costs and attorney fees through the lens of that statute.

A.      *Relevant background on section 998*

Under section 998, the costs allowed to the prevailing party under section 1032, including statutory attorney fees,[9] "shall be withheld or augmented as provided in this section."  (§ 998, subd. (a).)  Pursuant to this long-standing law, a party to a civil action—plaintiff or defendant—may serve upon any other party an offer to "*allow judgment to be taken* or an award to be entered in accordance with the terms and conditions stated at that time.  The written offer shall include a statement of the offer, *containing the terms and conditions of the judgment* or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted."  (§ 998, subd. (b), italics added.)  "If an offer made by a defendant is not accepted and the plaintiff *fails to obtain a more favorable judgment* or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer."  (§ 998, subd. (c)(1), italics added.)  Hence, the only question asked by subdivision (c)(1) of the statute is whether the plaintiff who rejected the offer obtained, or failed to obtain, a "more favorable judgment" through continued litigation.

---

the Song-Beverly Act.  (*Id*. at p. 726.)  We found the trial court erred in holding that the more specific provisions of the Song-Beverly Act trumped the "general provisions" of sections 998 and 1032.  Instead, we held that the language of these statutes could be harmonized with the Song-Beverly Act.  (*Duale, supra*, at p. 726, citing *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th at 985, 992 [applying section 998 in a Song-Beverly Act case].)  We see no reason to stray from this precedent.

[9]      Plaintiffs sought attorney fees under the Song-Beverly Act.  (Civ. Code, § 1794, subd. (d).)  "When authorized by statute, awards of attorney's fees are expressly defined as costs, not damages.  [Citation.]"  (*Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1308.)

It says nothing about the timing or form of that judgment, whether after trial, summary judgment, settlement, or otherwise.

In *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, the Court of Appeal examined whether a plaintiff's voluntary dismissal constituted a failure to obtain a more favorable judgment, thus triggering the defendant's right to cost shifting under section 998. (*Id*. at p. 91.) In holding that it did, the court explained that "section 998's 'more favorable judgment or award' language describes the necessary condition for relieving the refusing party of its obligation to pay . . . . The appropriate moment for a court to assess whether a more favorable judgment or award has been obtained is at the conclusion of the lawsuit." (*Id*. at p. 93, italics omitted.) "Section 998 does not require that the [offering defendant] achieve any specific result; the [statute] is triggered '[i]f . . . *plaintiff fails* to obtain a more favorable judgment or award . . . .' (§ 998, subd. (c)(1) . . . .) By its plain language, it requires that the plaintiff who refused the reasonable settlement offer obtain a more favorable judgment" to avoid application of section 998. (*Id*. at p. 94, original italics.)

From the foregoing authorities we conclude that a burden of sorts arises for a plaintiff who rejects a valid offer to compromise under section 998—the obligation to obtain a judgment more favorable than the unaccepted offer.

The policy behind section 998 penalties is well established. "It is to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804, superseded by statute as stated in *Quiles v. Parent* (2017) 10 Cal.App.5th 130, 144; *Chen v. BMW of North America, LLC* (2022) 87 Cal.App.5th 957, 961 [section 998, subdivision (c)(1) "encourages acceptance of reasonable offers by

12

penalizing a party who does not accept a settlement offer and then fails to achieve a better result through continued litigation"]; *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330 [section 998 penalizes a party " 'who fails to accept what, in retrospect, is seen to have been a reasonable offer' "]; *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 450 ["The basic premise of section 998 is that plaintiffs who reject reasonable settlement offers and then obtain less than the offer should be penalized for continuing the litigation"]; *Hurlbut v. Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 408 [section 998's purpose is to "punish[] a party who fails to accept a reasonable offer from the other party," italics omitted].)

B.     *Analysis*

Hyundai's operative section 998 offer in the amount of $55,556.70, dated May 26, 2017,[10] was rejected by plaintiffs through inaction and was deemed withdrawn.  (See § 998, subd. (b)(2).)  Just before trial began, however, the parties privately resolved all the legal issues in the case and stipulated to a settlement enforceable under section 664.6 whereby Hyundai would pay $39,000, and an amount of costs and attorney fees to be decided by the trial court on a contested motion, after which plaintiffs would be required to dismiss their complaint with prejudice.  In response to plaintiffs' fees and costs motion, Hyundai invoked section 998, subdivision (c) and urged the trial court to tax or deny recovery of any fees or costs incurred after May 26, 2017.  The trial court refused, reasoning that section 998's cost-shifting provisions do not apply to cases that end in settlement, and that because there was no trial, no judgment was rendered.

By its plain terms, section 998 does not exclude cases that end in settlement, or limit its cost-shifting provisions to cases that end in a judgment after trial, so we first

---

**10**     Hyundai's May 2017 offer to compromise is the operative one because a second offer under section 998 extinguishes the first.  (*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 392, as mod. on denial of rehg. May 20, 1999.)

13

examine the trial court's conclusion from the perspective of whether the final resolution of this case—payment of money in exchange for dismissal with prejudice of the complaint—effected a "judgment" within the meaning of section 998, subdivision (c).

### 1. Judgment under section 998

Section 998 does not define the term "judgment." The term "judgment" also has not been interpreted in the specific context we now consider, i.e., where a plaintiff who rejects a section 998 offer later settles for an amount less than the offer to compromise and agrees to dismiss their complaint with prejudice. (§ 998, subd. (c) [cost-shifting provision applies to a plaintiff who rejects a section 998 offer and "fails to obtain a more favorable judgment"].)

The term "judgment" has, however, been construed repeatedly by courts under subdivision *(b)* of section 998, which outlines the requirements for a valid offer and acceptance under the statute. That subdivision requires that a valid offer under section 998 must "allow judgment to be taken" and set forth the "terms and conditions of the judgment." In construing the term "judgment" in that context, courts have given the term a broad interpretation consistent with the statute's purpose to encourage parties to make and accept reasonable offers to compromise, permitting the statute to effectuate settlements based on a practical, rather than a literal, definition of "judgment."

For example, in *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140 (*DeSaulles*), our Supreme Court rejected the argument that a compromise offer was invalid under section 998 because it called for payment of money to the plaintiff and dismissal of the action rather than entry of judgment in the plaintiff's favor. Endorsing the expansive definition of "judgment" set forth in *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899 (*Goodstein*), the Supreme Court held: " '[A]s between the parties thereto and for purposes of enforcement of settlement agreements, a compromise agreement contemplating payment by defendant and dismissal of the action by plaintiff is *the legal equivalent of a judgment* in plaintiff's favor.' " (*DeSaulles,*

14

*supra*, at p. 1155, citing *Goodstein, supra*, 27 Cal.App.4th at p. 907, italics added.) Thus, the Supreme Court agreed that the term "judgment" in section 998 is meant to include its functional equivalents, such as dismissal of a case with prejudice.

Other intermediate appellate courts, including this one, similarly have held that "[a]lthough section 998 refers to entry of a judgment or award, an offer that provides for the plaintiff's dismissal of the action with prejudice is a valid form of offer within section 998." (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 470; *Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498, 504 [same].) Thus, "a dismissal with prejudice is tantamount to a judgment and a final disposition of the case, and . . . therefore in accord with section 998." (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1085; see also *Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533 [a "dismissal with prejudice following a settlement constitutes a final judgment on the merits"].)

While these cases address the definition of "judgment" in subdivision (b) of section 998, their authority guides our interpretation of the term "judgment" in subdivision (c)(1) of the statute. That is because it is "generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute." (*People v. Dillon* (1983) 34 Cal.3d 441, 468.) This interpretive maxim is especially apt here given that application of the statute requires a comparison between the terms and conditions of the "judgment" proposed in Hyundai's section 998 offer (§ 998, subd. (b)), and the "judgment" ultimately obtained by plaintiffs. (§ 998, subd. (c)(1).) While the use of the term "judgment" in the two subdivisions is not identical, it is still reasonable to conclude that by setting up a comparison between the "judgment" in the offer to compromise and the "judgment" later obtained, and using identical language to do so, the Legislature meant for both terms to be construed in a similarly flexible way.

15

Further, the Legislature " 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.' " (*People v. Frahs* (2020) 9 Cal.5th 618, 634.)  The Legislature has amended section 998 numerous times over the past 25 years, most recently in 2015.  (Stats. 2015, ch. 345, § 2; see also Stats. 1997, ch. 892, § 1; Stats. 1999, ch. 353, § 1; Stats. 2001, ch. 153, § 1; Stats. 2005, ch. 706, § 13.) *Goodstein* and other cases cited above were decided well before the Legislature last amended section 998 in 2015, yet it has never amended the statute to contravene the holding that the term "judgment" was equivalent to *any final resolution* of the action, including a dismissal with prejudice, nor have the words "at trial" been added after the phrase "more favorable judgment" where it appears in the statute.[11]  The Legislature's failure to amend section 998 in the face of this authority, while not conclusive, can be presumed to signify legislative acquiescence in the decisions finding that entry of a formal judgment is not required to trigger section 998's cost-shifting provisions.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750-751 ["[W]here the Legislature amends a statute without altering a consistent and long-standing judicial interpretation of its operative language, courts generally indulge in a presumption that the Legislature has ratified that interpretation"].)

---

[11]     We disagree with plaintiffs' assertion that the "Legislature has long understood that a 'judgment' meant a judgment after trial—that is, a judgment as an adjudicatory result."  Our dissenting colleague makes a similar contention, citing language from a committee analysis relating to a 1997 amendment to section 998 that expanded the statute's reach to arbitration proceedings.  (Conc. & dis. opn. *post*, at p. 11.)  We need not resort to legislative history here given that neither section 998, subdivision (b) nor (c)(1) contain the words "after trial" or "at trial" or *any* such qualifier related to the word "judgment."   Stray remarks in legislative analyses unrelated to the question before us cannot be used to contradict or augment legislative text.  "If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.  [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000.)

16

Based on the foregoing, we find it proper to interpret broadly the term "judgment" in subdivision (c)(1) of section 998 in the same way that courts have interpreted it in subdivision (b). Both the case law and the Legislature's acquiescence thereto promote a more expansive reading of the term. This includes, as the courts have repeatedly explained, construing the term "judgment" to include a dismissal with prejudice, like the one agreed to by the parties in this case.

2. *The structure and terms of the settlement in this case support the finding that the case ended with a judgment within the meaning of section 998*

The stipulated settlement here has several other indicia of a final judgment under section 998. First, there is no question that it resulted in a final determination of the parties' rights within the meaning of section 577. (§ 577 ["A judgment is the final determination of the rights of the parties in an action or proceeding"].) To be sure, the settlement resolved all the claims and defenses alleged in the pleadings with a payment by Hyundai in exchange for a release of the company and the selling dealership for "any claims that arise out of or [relate] to the facts and circumstances described in the complaint or relating to the sale of the vehicle or relating to the service and repair history of the subject vehicle." The only "nonfinal" aspects of the stipulated resolution were the amount of attorney fees and costs owed and the delayed filing of the request for dismissal with prejudice which, as discussed above, is dictated by the terms of the parties' settlement. But there is no question that Hyundai has an enforceable right to dismissal with prejudice, a proxy for final judgment on the merits (*Estate of Redfield, supra*, 193 Cal.App.4th at p. 1533), once the attorney fees and costs issue is finally resolved and the money is paid.[12]

---

[12] In fact, at oral argument, counsel for plaintiffs conceded that the settlement agreement contemplated entry of judgment following the fee award.

17

Second, the parties' use of section 664.6 as the vehicle to memorialize their agreement supports the proposition that the settlement was intended to effect a final judgment. Section 664.6, subdivision (a) provides, in pertinent part, that where, as here, parties to pending litigation stipulate orally before the court for settlement of the case, "the court, upon motion, may enter judgment pursuant to the terms of the settlement." This statute provides a streamlined method for reducing a stipulated settlement to judgment. "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit. [Citations.]" (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) Thus, "settlement agreements pursuant to section 664.6 . . . result not only in contractual agreements but also in judgments that conclusively resolve the issues between the parties." (*DeSaulles, supra*, 62 Cal.4th at p. 1153.) A settlement under this provision "is not incidental to the management of the lawsuit; it ends the lawsuit." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 583.) By entering into the settlement pursuant to section 664.6, the parties ensured the settlement would result in either dismissal with prejudice (where the parties fully performed) or formal entry of judgment (where a party failed to perform). In other words, the parties relied on section 664.6 to craft a settlement effecting a final, formal judgment or its functional equivalent.

Finally, we find support in the attorney fees provision of the Song-Beverly Act under which plaintiffs sought attorney fees and costs under the stipulated settlement. Civil Code section 1794, subdivision (d) provides that a prevailing vehicle purchaser "shall be allowed by the court to recover *as part of the judgment* a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Italics added.)

The stipulated settlement indisputably permits plaintiffs to recover some amount of costs and attorney fees under Civil Code section 1794, subdivision (d) "as part of the

18

judgment." This further evinces the parties' intent that the settlement function as, or would lead to, a judgment.[13] It is worth noting that appellate courts have defined "judgment" under Civil Code section 1794 consistent with the definition of "judgment" in section 998. (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1259-1263; *Hyundai Motor America v. Superior Court* (2015) 235 Cal.App.4th 418, 424-425.) In *Wohlgemuth*, the Fifth Appellate District considered whether a pretrial dismissal with prejudice pursuant to a settlement agreement constituted a "judgment" for purposes of seeking fees under the Song-Beverly Act. (*Wohlgemuth, supra*, at pp. 1259-1260.) In finding that it did, the court reasoned that such final dispositions, though not formal judgments, are tantamount to judgments for purposes of section 998. (*Wohlgemuth*, at p. 1263, citing *Goodstein, supra*, 27 Cal.App.4th at p. 907.) It then applied this same rationale from the section 998 caselaw to Civil Code section 1794, subdivision (d)'s definition of judgment, endorsing the same broad interpretation. (*Wohlgemuth*, at p. 1263.)

Given that the Song-Beverly Act's definition of "judgment" mirrors section 998's definition of "judgment," it would be inconsistent to conclude that the settlement resulted in a judgment triggering application of the Song-Beverly Act's fees provision, but did not result in a judgment triggering application of section 998, subdivision (c)'s cost-shifting provisions, when the term "judgment" in both statutes has been construed in the same way.

---

[13] Consistent with these terms, plaintiffs served and filed a notice of entry of judgment or order after issuance of the trial court's ruling on fees and costs, raising the inference that, at least by the time the trial court awarded costs and attorney fees, they believed it constituted a final determination of the parties' rights.

3. *The policy underlying section 998 supports application of the statute to the settlement reached in this case*

We further find that the policy considerations underlying section 998 support our conclusion here. As discussed earlier, "section 998 is a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers. A plaintiff who refuses a reasonable pretrial settlement offer and subsequently fails to obtain a 'more favorable judgment' is penalized by a loss of prevailing party costs and an award of costs in the defendant's favor." (*Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439.) "The goal has been to apply [section 998] in a manner which best promotes its purpose. [Citation.]" (*Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1375.)

The trial court found that section 998's policy of encouraging settlement was met by the stipulated settlement in this case, a finding that plaintiffs urge us to endorse. But the policy behind section 998's cost-shifting penalty provisions supports the conclusion that the statute is designed *not* to encourage pretrial settlements *generally*, but specifically to encourage the acceptance of offers to compromise *within the parameters of the statute* by using the stick of postoffer costs and fees against reluctant offerees. (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270 ["Section 998 clearly reflects this state's policy of encouraging settlements. [Citations.] In order to encourage parties to accept reasonable settlement offers *made pursuant to the section*, subdivisions (c) and (d) of section 998 afford the offeror a remedy against a party who has failed to accept a statutory settlement offer that proves to be reasonable," italics added].)

Applying section 998's "carrot and stick" approach to settlements like the one here furthers the statute's policy of avoiding gamesmanship and encouraging careful consideration and acceptance of reasonable offers to compromise. (See *Martinez, supra*, 56 Cal.4th at p. 1021 ["If a proposed rule would encourage gamesmanship or spawn

20

disputes over the operation of section 998, rejection of the rule is appropriate"].)
Hyundai's operative section 998 offer was for approximately $56,000, more than twice
the total cash price of the plaintiff's vehicle, plus attorney fees incurred to the point of the
offer. After allowing the offer to expire, plaintiffs continued to vigorously litigate the
case for more than 18 months, using three law firms, 16 attorneys, and billing practices
with "numerous instances of duplicative billing, billing for tasks that do not appear
reasonably necessary to the conduct of the litigation, and unreasonable amounts of time
spent on various tasks." The trial court found that neither the procedural nor substantive
complexity of the case required such robust litigation and awarded plaintiffs' counsel far
less in attorney fees than they were seeking.

The purpose of conserving judicial resources and encouraging early settlements by
imposing a strong financial disincentive on a party that fails to obtain a judgment more
favorable than a rejected offer to compromise would be substantially undercut by reading
the phrase "at trial" into section 998, subdivision (c). The same is true of engrafting a
vague limitation under which cost shifting is triggered only when the plaintiff's
"unilateral action" results in a judgment less favorable than a previously rejected offer to
compromise, as our dissenting colleague suggests. (Conc. & dis. opn. *post*, at pp. 6-9.)
Either interpretation would allow offerees to avoid section 998's penalties by rejecting a
reasonable offer to compromise, forcing the opposing party to continue defending against
needless, aggressive litigation, and settling on the eve of trial outside the parameters of
the statute.

Similarly, while the policies animating section 998, subdivision (c) are well served
by applying the statute in this case because it will incentivize careful review and
acceptance of reasonable offers to compromise, the same is not true of a blanket rule that
section 998 does not apply in cases that end with a settlement. For instance, if a
defendant who makes a reasonable offer to compromise early in the case, and is confident
that the plaintiff is unlikely to secure a more favorable judgment through continued

21

litigation, would lose the benefit (and leverage) of cost shifting by settling, that defendant would have little incentive not to go to trial, especially where, as here, attorney fees are included in the bounty of costs recoverable by the plaintiff. Indeed, Hyundai explains in its reply brief that it would not have settled if section 998 did not apply. Under the rule we adopt, a plaintiff need only factor any operative section 998 offer into a comprehensive settlement, and either try to negotiate a fixed amount of costs or attorney fees, or bargain for a waiver of any rights under section 998 from the defendant. Plaintiffs took neither precaution here. They instead agreed to litigate the issue of costs and attorney fees without restricting the defenses that Hyundai could raise in response to their motion.

Our dissenting colleague advances several arguments that seek to raise the specter of unintended consequences that purportedly would flow from our interpretation and "inject uncertainty into the section 998 process." (Conc. & dis. opn. *post*, at p. 18.) The hypotheticals employed in that analysis, however—relating to possible changes in the law, a complex construction defect case, and arbitration proceedings—are far afield of the question we decide today. (See conc. & dis. opn. *post*, at pp. 19-23.) It is well settled that appellate opinions are not authority for propositions that are not considered and decided. (*KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1032.) That maxim applies with equal force to this decision. The speculative concerns raised in the dissent may be the subject of future decisions, but we do not resolve them today.

Plaintiffs rejected reasonable offers to compromise early in the case, creating a known risk that they might have to forfeit costs and attorney fees from the date of the operative section 998 offer if they failed to obtain a more favorable judgment later. When they ultimately agreed on the brink of trial to accept a monetary settlement that was less than Hyundai's second section 998 offer, and further agreed to dismiss their complaint with prejudice, they "fail[ed] to obtain a more favorable judgment" within the

22

meaning of section 998, subdivision (c). The trial court should therefore have applied that statute when assessing the costs and attorney fees recoverable by the parties.

4. *The dissent's deconstruction of the phrase "fails to obtain" runs afoul of statutory interpretation principles*

Although not raised in the parties' briefing, a substantial portion of the dissent is devoted to explicating the phrase "fails to obtain," as used in section 998, subdivision (c), which provides, in part: "If an offer made by a defendant is not accepted and the plaintiff *fails to obtain* a more favorable judgment . . . ." (Conc. & dis. opn. *post*, at pp. 6-10, italics added.)

Relying on definitions, not from a standard dictionary, but from a legal thesaurus and a 1968 edition of Black's Law Dictionary, the dissent asserts that the "plain meaning of 'fail' and the association of that word with a result obtained by the plaintiff indicates section 998(c)(1)'s cost-shifting provision applies only when the plaintiff's *unilateral* action results in a judgment less favorable than a previously rejected or withdrawn offer to compromise." (Conc. & dis. opn. *post*, at p. 6, original italics.) It further asserts that these "definitions demonstrate 'fails to obtain' may reasonably be understood to refer to the result flowing from the plaintiff's unilateral action rather than a result flowing from a compromise between opposing parties," where there is not a "defeat," a "loss," or an abandonment of the action. (*Id*. at p. 7.) Finally, the dissent posits that, if the phrase were considered ambiguous, this interpretation would be in harmony with the term's usage in other sections of the Code of Civil Procedure (*id*. at pp. 8-9), and consistent with the legislative history of section 998. (*Id*. at pp. 9-12.)

The false premise underlying these efforts to draw implied inferences from section 998, subdivision (c) and limit its reach to "unilateral" failures or "litigated results" (conc. & dis. opn. *post*, at pp. 11-12) is the idea that the statute is so abstruse that we must resort to a legal dictionary, thesaurus, or statutory deconstruction. The phrase "fails to obtain a more favorable judgment" means what it says—the plaintiff fails to, or does not, meet its

23

obligation at the conclusion of the lawsuit to obtain a judgment more favorable than the amount stated in the offer to compromise. "If there is no ambiguity in the language of [a] statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation.]" (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.) There is no need to go beyond the plain text of section 998, subdivision (c) to divine the meaning of the phrase "fails to obtain."

### 5. *Plaintiffs' other arguments lack merit*

Plaintiffs advance two theories supporting their argument that "[they] cannot have failed to obtain a more favorable judgment or award than a rejected [section] 998 offer when the settlement (and the offer preceding it) subsumes, supersedes, and renders that offer a legal nullity." Their first theory is that "[o]nce a contract is executed, 'all prior negotiations and stipulations concerning the subject matter' of that contract 'are considered merged therein.' " (Quoting *Bradford v. Southern California Petroleum Corp.* (1944) 62 Cal.App.2d 450, 461 & citing Civ. Code, § 1625.) Their second theory is that the last offer rule applies; they assert "[t]he principle that 'any new offer communicated prior to a valid acceptance of a previous offer, extinguishes and replaces the prior one' is just as enduring." (Quoting *Distefano v. Hall* (1968) 263 Cal.App.2d 380, 385.)

The merger theory advanced by plaintiffs is inapplicable because it applies to only *written* contracts. (Civ. Code, § 1625 ["The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument"].) Here, the settlement agreement was presented orally to the trial court in accordance with section 664.6. Plaintiffs have presented us with no authority, nor are we aware of any, providing the merger doctrine applies to oral contracts.

We further decline to apply the last offer rule because it is unclear which party made the offer resulting in the settlement agreement. As our Supreme Court explained, "under the so-called 'last offer rule' . . . , when a party makes successive unrevoked and unaccepted section 998 offers, the last such offer is the *only* operative offer with respect to the statutory benefits and burdens." (*Martinez, supra*, 56 Cal.4th at p. 1023, fn. omitted.) However, the record here merely provides the parties reached a settlement; it does not identify the offeror or offeree.[14]

While conceding the inapplicability of the last offer rule to this case, the dissent nevertheless appears to argue for application of a related contract interpretation doctrine, implied revocation of Hyundai's May 2017 section 998 offer by inconsistent action (settlement). Under the formulation of the rule articulated in *Varney Entertainment Group, Inc. v. Avon Plastics, Inc.* (2021) 61 Cal.App.5th 222, " '[a]n *offeree's power of acceptance is terminated* when the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect.' " (*Id*. at p. 235, citing Rest.2d Contracts, § 43.) However, the application of this doctrine advanced by the dissent rests on the assumption that Hyundai intended sub silentio to waive its right to seek cost shifting under section 998 by virtue of entering into the settlement. (Conc. & dis. opn. *post*, at p. 17.) Clearly, Hyundai had no such intent given that it agreed to leave open the issue of costs and attorney fees and sought the statute's protections when the parties litigated the issue, as it was free to do under the settlement agreement.

---

[14]     Hyundai asserts plaintiffs made the offer to settle on the first day of trial. It provides no citation to the record for these statements, however, and we thus disregard them. (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court"].)

25

More importantly, applying contract interpretation principles to render Hyundai's May 2017 section 998 offer "inoperable" (conc. & dis. opn. *post*, at pp. 16-17) would defeat the purpose of section 998 to penalize parties who decline reasonable offers to compromise, and conflict with the statute by relieving plaintiffs of their statutory obligation to obtain a judgment more favorable than the rejected offer to compromise. (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 ["general contract law principles should apply to section 998 offers and acceptances only where such principles neither conflict with the statute nor defeat its purpose"].)

Finally, application of the inconsistent action rule hinges on there being some manifestation of the *offeror's* intent to revoke an earlier offer that it made. (See *Varney Entertainment Group, Inc. v. Avon Plastics, Inc., supra*, 61 Cal.App.5th at p. 235 [holding that a pending offer to compromise under section 998 was impliedly extinguished by the *offeror's* inconsistent offer to enter into a stipulated judgment].) In other words, the *offeror* has to take some action that is materially inconsistent with its first offer, thereby constructively extinguishing that prior offer. There is no material inconsistency between the settlement and Hyundai's second section 998 offer. First, the May 26, 2017 offer already was extinguished by operation of law under section 998, subdivision (b)(2). Second, the record does not disclose which side made the offer that led to the settlement. If Hyundai did not make the offer, then the inconsistent offer rule would not apply given that the offeror did not "take definite action" to revoke its $55,556.70 offer; it merely would have been reacting to an offer from plaintiffs. And finally, the settlement was not inconsistent with Hyundai's right to raise section 998, subdivision (c) in opposition to plaintiffs' motion for attorney fees and costs, given that plaintiffs agreed without qualification to leave the issue of costs and attorney fees for the trial court to resolve.

26

DISPOSITION

The order is reversed.  Hyundai shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


                                                              KRAUSE          , J.


I concur:


      DUARTE         , J.

27

ROBIE, Acting P. J., Concurring and Dissenting.

Code of Civil Procedure[1] section 998 "requires cost shifting when a party fails to accept a statutory offer to comprise. The statute provides that at least 10 days before trial, a defendant 'may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated.' [Citation.] If the plaintiff accepts the offer, the court 'shall enter judgment accordingly.' [Citation.] But if the plaintiff does not accept the offer and fails to obtain a more favorable judgment, the plaintiff 'shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer.' [Citation.] '[C]osts' include those items allowable as costs to the prevailing party as a matter of law, including attorney fees awarded by statute or contract." (*Varney Entertainment Group, Inc. v. Avon Plastics, Inc.* (2021) 61 Cal.App.5th 222, 232 (*Varney*).)

In this case, plaintiffs Oscar J. Madrigal and Audrey M. Madrigal sued defendant Hyundai Motor America (Hyundai) under the Song-Beverly Consumer Warranty Act (Act) after purchasing an allegedly defective Hyundai vehicle. Hyundai made two section 998 offers to compromise; plaintiffs did not accept either offer.[2] After the jury was sworn in, the parties reached a settlement and orally presented the terms of the settlement to the trial court in accordance with section 664.6. In short, the parties agreed Hyundai would pay plaintiffs $39,000 and any attorney fees, costs, and expenses awarded to plaintiffs by the trial court following plaintiffs' subsequent motion, and plaintiffs would thereafter file a dismissal with prejudice. The agreed upon damages settlement was for an amount less than the second unaccepted section 998 offer.

The novel question presented is whether section 998, subdivision (c)(1)'s (section 998(c)(1)) mandatory cost-shifting provision applies when a plaintiff rejects an offer to

---

[1] Undesignated section references are to the Code of Civil Procedure.

[2] The parties agree to this fact.

1

compromise and the parties later settle the matter for an amount less than the defendant had offered in the rejected offer to compromise.  I concur in the majority's conclusion that we have jurisdiction to consider the merits of this question and agree the merger doctrine and last offer rule do not apply under the facts of this case.  I dissent, however, to the conclusion that section 998(c)(1)'s mandatory cost-shifting provision applies when the parties enter into a settlement agreement.

Based on the plain language of the statute, the legislative history, and the purpose and public policy behind section 998, I believe section 998(c)(1)'s cost-shifting provision applies only when a plaintiff through unilateral action obtains a less favorable judgment than a previously rejected section 998 offer.

I

*The General Nuts And Bolts Of Section 998*

Section 998, subdivision (a) provides that the "costs allowed under Sections 1031 and 1032 shall be withheld or augmented" as provided in section 998.  Section 998, subdivision (b) provides, in pertinent part:  "Not less than 10 days prior to commencement of trial or arbitration . . . of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time.  The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted."  "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration."  (§ 998, subd. (b)(2).)

Pertinent to this appeal, section 998(c)(1) provides, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the

2

defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." In that regard, "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under [section 998], from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff. If the costs awarded under [section 998] exceed the amount of the damages awarded to the plaintiff[,] the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly." (§ 998, subd. (e).)

When a plaintiff fails to accept a defendant's section 998 offer and fails to obtain a more favorable judgment, the trial court determines whether the defendant's prior unaccepted section 998 offer was made in good faith. (*Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 833.) An offer is made in good faith only if it carried with it some reasonable prospect of acceptance. (*Id*. at p. 834.) Whether the offer is reasonable "depends upon the information available to the parties *as of the date the offer was served*." (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 130, italics added.)

"Reasonableness generally 'is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known to the defendant,' and '[i]f an experienced attorney or judge, standing in defendant's shoes, would place the prediction within a range of reasonably possible results, the prediction is reasonable.' " (*Whatley-Miller v. Cooper* (2013)

3

212 Cal.App.4th 1103, 1112.)  " 'If the offer is found reasonable by the first test, it must then satisfy a second test:  whether [the defendant's] information was known or reasonably should have been known to [the plaintiff].  This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one.  If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer.' "  (*Id*. at p. 1113.)

"In light of this focus on the reasonableness of the *offeror*'s conduct in *making* the [section] 998 offer (which makes sense because the issue is the validity of the offer in the first place), whether the *offeree* acted reasonably in *rejecting* that offer is irrelevant." (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 925.)  "In assessing whether the [section] 998 offeror knew that the offeree had sufficient information to evaluate the offer (the second consideration), the offeree needs information bearing on the issue of liability as well as on the amount of damages because these are the issues upon which a verdict would rest and because the [section] 998 offer, if accepted, would be in lieu of that verdict." (*Ibid*.)  "In assessing the information available to the offeree, courts are to look to all of the relevant circumstances." (*Ibid*.)

In *Duale*, this court held that section 998 applies in Act cases because Civil Code section 1794, subdivision (d), which provides a prevailing buyer is entitled to costs and expenses, including attorney's fees, reasonably expended in connection with the commencement and prosecution of the action, "triggers application" of section 1032. (*Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 724, 726; see also *Covert v. FCA USA, LLC*, *supra*, 73 Cal.App.5th at pp. 827-828 [buyer in an Act case who failed to obtain a more favorable judgment at trial than a previously rejected § 998

4

offer could not recover postoffer attorney's fees and costs under Civil Code § 1794, subd. (d)].)

## II

*Section 998(c)(1)'s Mandatory Cost-Shifting*

*Provision Does Not Apply To Settlements*

Pertinent to this appeal, Hyundai argued in the trial court that section 998(c)(1)'s cost-shifting provision applies because the terms of the parties' settlement constituted a failure by plaintiffs to obtain a judgment more favorable than Hyundai's second section 998 offer. Whether section 998(c)(1)'s cost-shifting provision applies to settlement agreements that are adjudged less favorable than a previously rejected or withdrawn offer to compromise is a question of statutory interpretation subject to de novo review. (*Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 546.)

Our fundamental task in statutory interpretation cases " ' "is to determine the Legislature's intent so as to effectuate the law's purpose." ' " (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.) "Toward this end we must accord a reasonable and commonsense interpretation consistent with the Legislature's purpose." (*Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 177.) In the absence of a statutory definition, "we presume the words were intended to be understood ' "in [their] ordinary sense and, consequently, we may refer to [those words'] dictionary definition[s] to ascertain [their] ordinary, usual meaning." ' " (*In re Kavanaugh* (2021) 61 Cal.App.5th 320, 345.) We do not, however, look at words in isolation. " 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' " (*People v. Shabazz* (2006) 38 Cal.4th 55, 67.) Generally, "[w]hen the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388.) " ' "If, however, the statutory terms are

ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." ' " (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1545.)

The majority focuses on the word "judgment" to conclude section 998(c)(1) applies to the section 664.6 oral settlement because the settlement was less favorable than Hyundai's second rejected/withdrawn offer to compromise. Even if the settlement constitutes a "judgment" within the meaning of section 998 as the majority proposes, however, the analysis does not end there. We must, if possible, "give effect and significance to every word and phrase of a statute." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) To that end, the cost-shifting provision of section 998(c)(1) applies when the plaintiff *fails to obtain* a judgment more favorable than a previously rejected or withdrawn offer to compromise. (Cf. Fed. Rules Civ. Proc., rule 68(d) ["If the judgment that the offeree finally obtains *is not* more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made" (italics added)].) The plain meaning of "fail" and the association of that word with a result obtained by the plaintiff indicates section 998(c)(1)'s cost-shifting provision applies only when the plaintiff's *unilateral* action results in a judgment less favorable than a previously rejected or withdrawn offer to compromise.

Burton's Legal Thesaurus delineates the definition of "fail" into two categories. The first category relates to loss: "be defeated, be demoted, be unsuccessful, become bankrupt, become insolvent, botch, bungle, *cadere, . . . concidere,* crash, decline, *deficere,* deteriorate, disappoint, dishonor, err, fall short, flunk, fold, go out of business, go under, lose, miscarry, miss the mark, not succeed, prove inadequate, prove unsatisfactory, prove useless, succumb." (Burton's Legal Thesaurus (3d ed. 1998) p. 228, col. 1.) The second category is delineated in terms of neglect: "abandon, avoid, break one's promise, break one's word, desert, evade, forsake, ignore, leave, let one down, mismanage, miss, miss an opportunity, omit, prove unreliable, shirk." (*Ibid.*)

6

Black's Law Dictionary defines "fail" to mean "[f]ault, negligence, or refusal" and to also mean, among other things, "[i]nvoluntarily to fall short of success or the attainment of one's purpose." (Black's Law Dict. (rev. 4th ed. 1968) p. 711, col. 1.) It further defines "failure" to mean "[a]bandonment or defeat," "[d]eficiency, want, or lack; ineffectualness; inefficiency as measured by some legal standard; an unsuccessful attempt." (*Id.* at p. 711, col. 2; see, e.g., *State v. Summers* (1928) 320 Mo. 189, 196 [6 S.W.2d 883, 885] ["Failure, when used in connection with any enterprise, in its ordinary and obvious sense, means abandonment or defeat"]; *White v. Pettijohn* (1840) 23 N.C. 52, 54-55 [same].)

The foregoing definitions demonstrate "fails to obtain" may reasonably be understood to refer to the result flowing from the plaintiff's *unilateral* action rather than a result flowing from a compromise between opposing parties. A plaintiff is *defeated or loses*, for example, when, following an adverse adjudication, the plaintiff obtains a judgment less favorable than what the defendant offered in a previously rejected or withdrawn offer to compromise (e.g., where the plaintiff obtains a lesser damages award following a trial or arbitration). A plaintiff may also obtain a less favorable judgment by *abandoning* the action and making no effort to obtain a judgment at all. (See, e.g., *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 93-94 ["A plaintiff may fail to obtain a more favorable judgment or award by failing to obtain any award at all, as in the case of voluntary dismissal"].) Neither of the foregoing plain meaning applications pertain to negotiated settlements where the result is not due to the plaintiff's unilateral action, but is instead the result of continued negotiations and a compromised settlement between the parties.

Moreover, a settlement does not result in a winner or a loser. (See, e.g., *Delgado v. Boyles* (Ind.Ct.App. 2010) 922 N.E.2d 1267, 1270, 1272 [a contract provision requiring the unsuccessful party to pay the successful party's reasonable costs and attorney fees as part of any judgment recovered did not apply because a "private

7

settlement cannot result in a winner or loser"]; *Chester Upland Sch. Dist. v. Commonwealth* (E.D.Pa. 2012) 284 F.R.D. 305, 308 ["settlement avoids labeling one side as the winner and the other side as the loser"]; *Daily Gazette Co. v. West Virginia Dev. Office* (1999) 206 W.Va. 51, 61 [521 S.E.2d 543, 553] [successful means to win].)

"In ordinary civil actions such as the one before us, the parties come to court seeking resolution of a dispute between them.  The litigation process they encounter is fraught with complexities, uncertainties, delays, and risks of many kinds.  Different judges and juries may respond in different ways to the same evidence and argument.  Public judicial proceedings may result in adverse publicity and unwanted disclosure of previously confidential information.  Damage awards (or failure to recover) may cause financial hardship or ruin." (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 280.)  " '[A] settlement allows parties to resolve their dispute by compromise, *taking into consideration all relevant risks and costs*.  In settlement, each side gives up something:  a plaintiff foregoes the opportunity to recover the maximum award achievable through a jury trial, and a defendant foregoes the chance to obtain vindication . . . that it could achieve with a victory at trial.' " (*Zhao v. United States* (S.D.Ill. 2019) 411 F.Supp.3d 413, 445, italics added.)  "The essence of settlement is compromise.  [Citations.]  Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory." (*E.E.O.C. v. Hiram Walker & Sons, Inc.* (7th Cir. 1985) 768 F.2d 884, 889.)

The interpretation that "fails to obtain" in section 998(c)(1) pertains to the result flowing from a plaintiff's unilateral action harmonizes the Legislature's use of "fail" in other parts of the Code of Civil Procedure as well.  (See *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 716 ["words should be given the same meaning throughout a code unless the Legislature has indicated otherwise"]; *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 291 ["where a word or phrase has been

8

given a particular meaning in one part of the law, it should be given the same meaning in other parts of the law"].)  "Failed," "fails," or "failure" in the Code of Civil Procedure are used in reference to a specific party's or individual's action or inaction in litigation.  (See, e.g., §§ 426.50 ["A party who fails to plead," and "if the party who failed to plead the cause acted in good faith"], 1297.116, subd. (a) ["A party fails to act"], 1268.020, subd. (a) ["the plaintiff fails to pay the full amount"], 1029.6, subd. (a) ["The failure of any defendant to join"], 1030, subd. (d) ["If the plaintiff fails to file the undertaking"], 1002, subd. (e) ["An attorney's failure to comply"].)

Even if "fails to obtain" is ambiguous, however, the appropriate conclusion is that section 998(c)(1)'s cost-shifting provision does not apply to negotiated settlements. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 ["A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable"].)  The legislative history is scant on the question presented, but the history we have available to us supports this interpretation.  (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 [if the meaning of a word is ambiguous, courts may refer to the legislative history to determine the meaning].)

"The predecessor of section 998 providing for an opportunity to obtain costs on the basis of a settlement offer was first enacted in 1851.  [Citation.]  The section was substantially the same as the New York Code of Procedure, section 385[,] which was derived from the Field Code (First Rep. [of] the Com[rs.]. on Prac. & Pleadings, Code Proc., § 338 (1848)) except that the New York provision allowed ten days for acceptance, while the California provision allowed five."  (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 286 (dis. opn. of Broussard, J.) (*T.M. Cobb*).)  The Field Code explained the intended offer to compromise language, as adopted in California in section 998's predecessor and which included the "fails to obtain" language as it remains in section 998 today, was intended to ensure that, when a plaintiff rejects an offer to compromise, "but carries on the action, in order to recover a greater amount, he does it at the hazard of

9

paying costs to the defendant, if he *shall fail to establish a greater claim*." (First Rep. of the Comrs. on Prac. & Pleadings, Code Proc., § 338, *supra*, at p. 239, italics added.) The "principal benefit hoped" for was "to save the time of courts and witnesses, and the expense to parties, *in proving the amount of damages, in case the right to recover in the action, shall be established*." (*Ibid*., italics added.)

A plaintiff can only *fail to establish* a greater claim if the plaintiff abandons the effort to do so by dismissing the case or fails to prove the claim in an adjudication. The plain meaning of "establish" in the legal context of establishing a claim is "[t]o prove; to convince." (Black's Law Dict. (8th ed. 2004) p. 586, col. 1; see *State v. Estime* (Fla.Dist.Ct.App. 2018) 259 So.3d 884, 887-889 [to "establish" the identity of the accused means "to prove" it]; *Lawson v. Superior Court* (1957) 155 Cal.App.2d 755, 758 [" 'To prove' means 'to establish or make certain; to establish a fact or hypothesis as true by satisfactory and sufficient evidence' "]; *Greenwich Collieries v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor* (3d Cir. 1993) 990 F.2d 730, 734 [same]; *Guzman v. Commonwealth* (2010) 458 Mass. 354, 362 [937 N.E.2d 441, 447] [" 'Establish' means to prove"]; *Ash‑Will Farms, L.L.C. v. Leachman Cattle Co.* (Cir.Ct. 2003) 61 Va.Cir. 165, 169 ["To establish means to prove"].) A settlement does not *prove* anything regarding a legal claim, nor does it prove the amount of damages; a settlement thus does not result in a plaintiff failing to establish a greater claim than a previously rejected or withdrawn section 998 offer.

Further, although the subsequent legislative history of a statute generally does not have much bearing on the Legislature's intent and understanding of the statute when it was originally enacted, it can be persuasive when a subsequent amendment directly bears on the Legislature's understanding regarding the future application of the statute. (See *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 54, fn. 17.) That is particularly true here, where the Legislature in 1997, among other things, expanded section 998 under Senate Bill No. 73 (1997-1998 Reg. Sess.) to apply to arbitration proceedings in the same way it

10

applies to judicial proceedings, and amended the cost-shifting provision to clarify that postoffer costs are excluded for purposes of determining if the plaintiff obtained a judgment more favorable than a previously rejected section 998 offer.  (Stats. 1997, ch. 892, § 1, pp. 6389-6391.)

When the Legislature considered whether to amend section 998 in that regard, it considered various analyses that repeatedly stated section 998 (which then applied only in judicial proceedings) applies when a party rejects a settlement offer and subsequently fails to do better *at trial*.  For example, the analyses explained Senate Bill No. 73 would revise the law awarding costs against a party who rejected a section 998 offer and "fails to do better at trial" by excluding postoffer costs from the calculation of whether the party does better than the rejected section 998 offer, by specifying a plaintiff who rejects a section 998 offer and "fails to do better at trial" must pay the defendant's costs from the date of the offer, and by making the provision applicable to "contractual and medical malpractice arbitrations."  (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as proposed to be amended July 16, 1997, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended May 1, 1997, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended Aug. 25, 1997, pp. 1-2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended May 20, 1997, pp. 1-2; Sen. 3d reading analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended July 21, 1997, p. 1; Sen. 3d reading analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended Aug. 11, 1997, p. 1; Sen. 3d reading analysis of Sen. Bill No. 73 (1997-1998 Reg. Sess.) as amended Aug. 25, 1997, p. 1.)

The foregoing analyses show the Legislature considered whether to amend section 998 and expand it to arbitration proceedings through the prism that section 998(c)(1) applies when a plaintiff obtains *a litigated result* less favorable than a previously rejected

11

section 998 offer. This is consistent with the statements in the Field Code when section 998 was first enacted.

It is worth noting that section 998(c)(1)'s cost-shifting provision has been a part of California law, in one form or another, since California adopted the initial version of the statute in 1851, over 170 years ago. (*T.M. Cobb Co.*, *supra*, 36 Cal.3d at p. 286 (dis. opn. of Broussard, J.).) Even though the vast majority of civil cases resolve in settlements (Baker, *Managed Cooperation in a Post-Sago Mine Disaster World* (2013) 33 Pace L.Rev. 491, 514 ["[95] percent of cases filed in the California state judicial system eventually settle before trial"]), no case has addressed the question whether section 998(c)(1)'s cost-shifting provision applies to a negotiated settlement. Does that not seem odd? I believe it is indicative of the overall historical understanding that section 998(c)(1) applies when a less favorable result is obtained while the parties act in their respective litigant roles, e.g., as adversaries at trial or arbitration.

The interpretation that the cost-shifting provision does not apply to settlements is also supported by the purpose of section 998. (*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 389 (*Wilson*) ["In construing section 998, we follow the fundamental rule of statutory construction ' "that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law" ' "]; see also *Hughes v. Board of Architectural Examiners*, *supra*, 17 Cal.4th at p. 776 [when a statute is ambiguous, courts consider extrinsic aids such as legislative history and a statute's purpose to ascertain the Legislature's intent].) "The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' " (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019 (*Martinez*).) "Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits." (*Ibid*.) As explained in greater detail *post*, the interpretation that a settlement is not a failure to obtain a more favorable judgment is reasonable, practical, and workable because it serves the policy of encouraging settlements.

12

Before delving into that analysis, however, it is notable that, "[w]hen the language of section 998 does not provide a definitive answer for a particular application of its terms, courts may consult and apply general contract law principles.  Because the process of settlement and compromise is a contractual one, such principles may, in appropriate circumstances, govern the offer and acceptance process under section 998.  [Citation.]  A general contract law principle may be found controlling if the policy of encouraging settlements is 'best promoted' thereby."  (*Martinez*, *supra*, 56 Cal.4th at p. 1020.)  To the extent the language of section 998 is not definitive as to the statute's application to settlement agreements, which I believe it is, a general contract law principle supports the interpretation that section 998 does not apply in that context.

It is well established under contract law that "[a]n offeree's power of acceptance may be terminated by" revocation of the offer, rejection by the offeree, the making of a counteroffer, lapse of time, incapacity of the offeror, or the "non-occurrence of any condition of acceptance under the terms of the offer."  (Rest.2d Contracts, § 36.)  An offer is revoked by communication from the offeror of his, her, or their intention not to enter into the proposed contract.  (*Id*., § 42 [titled, "Revocation by Communication from Offeror Received by Offeree" (boldface & capitalization omitted)].)  The manifestation of such an intention may be implied when the offeror "takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect."  (*Id*., § 43 [titled, "Indirect Communication of Revocation" (boldface omitted)]; see 1 Corbin, Contracts (rev. ed. 2018) § 2.20, p. 291 ["Any statement by the offeror to the offeree that even implicitly states the offeror no longer regards the offer as a commitment constitutes a revocation"].)  "Perhaps the most prominent type of indirect revocation, one that is widely recognized by the courts, is the subsequent offer dealing with the same subject matter."  (1 Corbin, *supra*, § 2.20, p. 297.)  This is known as the last offer rule.  (See *id*., p. 295, fn. 6, citing *Wilson*, *supra*, 72 Cal.App.4th 382.)  Although the last offer rule is inapplicable under the facts of this

13

case,[3] cases applying the last offer rule within the context of rejected or withdrawn section 998 offers assist to show why Hyundai's second section 998 offer was no longer operative for purposes of section 998(c)(1). (*Varney*, *supra*, 61 Cal.App.5th at p. 234 ["A revoked section 998 offer no longer functions as a statutory 'offer' to settle and does not trigger section 998's cost shifting provisions"].)

In *Martinez*, our Supreme Court explained the last offer rule as follows: "*Distefano* [*v. Hall* (1968)] 263 Cal.App.2d 380, involved two defense offers to compromise under former section 997, the predecessor to section 998. There, the defendants first made a $ 20,000 statutory offer, which was not accepted. At trial, the plaintiff obtained an award of $ 28,500, which was reversed on appeal. The defendants thereafter made a $ 10,000 statutory offer, which also was not accepted. The plaintiff obtained an award of $ 12,559.96 at the retrial and was allowed costs. [Citation.] On appeal, the defendants challenged the cost award and further contended the plaintiff should pay their costs because he refused to accept their first offer of $ 20,000, which was more favorable to the plaintiff than the result at the retrial. [Citation.]

"The *Distefano* court affirmed, emphasizing the contractual nature of the statutory settlement and compromise process and the general contract rule that 'any new offer

---

**3**      I render no opinion on whether the last offer rule would apply if the record showed Hyundai made the oral settlement offer leading to the section 664.6 settlement because that is not an established fact in this case. I will note, however, that I am unaware of a case that has resolved that question. Although an appellate court previously declined to apply contract principles to render a prior unaccepted section 998 offer inoperable when the defendant made a subsequent oral nonstatutory offer (*Gallagher v. Heritage* (1983) 144 Cal.App.3d 546, 547-548), that case was overruled by our Supreme Court in *T.M. Cobb Co.*, *supra*, 36 Cal.3d at page 279 based on the appellate court's refusal to apply contract principles. I note this only to point out that, if the last offer rule applies to an oral settlement offer, it would create a dichotomy in the application of section 998 because whether the rejected section 998 offer remains operative for cost-shifting purposes would depend on *who* made the oral settlement offer. Such a rule could stifle settlement communications.

communicated prior to a valid acceptance of a previous offer, extinguishes and replaces the prior one.' [Citation.] Discerning a legislative intent to give 'full effect to the parties' reappraisals of the merits' of their cases, *Distefano* concluded that parties should be encouraged to make and consider multiple settlement offers and that the policy in favor of settlements would be promoted by a rule that a later statutory offer extinguishes a previous statutory offer for purposes of cost shifting. [Citation.] Thus, because the plaintiff ultimately obtained a verdict more favorable than the defendants' last offer, he was not required to pay the defendants' costs. [Citation.]

"*T. M. Cobb*, *supra*, 36 Cal.3d 273, did not address the effect of multiple offers under section 998. Significantly, however, the decision approved of *Distefano*'s reasoning that, because section 998 involves the contractual process of settlement and compromise, general contract law principles may properly govern the statutory offer and acceptance process so long as they 'neither conflict with the statute nor defeat its purpose.' [Citation.]

"In *Wilson*, *supra*, 72 Cal.App.4th 382, a plaintiff made two section 998 offers to compromise. The first offer was for $ 150,000, and the second was for $ 249,000. The defendant failed to respond to either offer, and each was statutorily deemed withdrawn. The jury awarded a verdict of $ 175,000 in the plaintiff's favor. [Citation.] The trial court granted the defendant's motion to tax the expert witness fees upon finding the plaintiff's last offer of $ 249,000 ' "superseded and extinguished" ' her first offer of $ 150,000. [Citation.]

"The *Wilson* court affirmed. After noting section 998's silence on whether a subsequent statutory offer extinguishes a prior one, *Wilson* relied on *T. M. Cobb*, *supra*, 36 Cal.3d 273, and *Distefano* [*v. Hall*], *supra*, 263 Cal.App.2d 380, to conclude the plaintiff's second offer extinguished her first offer. [Citation.] Specifically, *Wilson* agreed with *Distefano* that, in fairness, parties must be allowed to 'review their respective positions' as more information is discovered and to 'consider how the law applies before

15

they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial.' [Citation.] Although *Wilson* acknowledged that 'settlements achieved earlier rather than later are beneficial to the parties and thus to be encouraged . . . ' [citation], it expressed concern that, if a subsequent offer did not extinguish a previous one, then '[a] plaintiff might be encouraged to maintain a higher settlement demand on the eve of trial and refuse to settle a case that should otherwise be settled if the plaintiff finds comfort in the knowledge that, even if the plaintiff receives an award less than his or her last demand, the plaintiff might still enjoy the cost reimbursement benefits of section 998 so long as the award exceeded a lower demand made by the plaintiff sometime during the course of the litigation' [citation]. Thus, under the so-called 'last offer rule' applied in *Wilson* and *Distefano*, when a party makes successive unrevoked and unaccepted section 998 offers, the last such offer is the *only* operative offer with respect to the statutory benefits and burdens.

"We note the Legislature did not respond to the *Distefano* decision in 1971 when it repealed former section 997 and reenacted its contents in section 998. Nor did the Legislature act to otherwise repudiate the last offer rule in several subsequent amendments of the statute. But . . . none of the Legislature's activity regarding section 998 has ever addressed successive offers, or any of the case law relating to this particular topic. And significantly, the Legislature has never acted to cabin [our Supreme Court's] holdings . . . that a basic contract law principle may not be applied if it would defeat or conflict with section 998's policy of encouraging settlement." (*Martinez*, *supra*, 56 Cal.4th at pp. 1022-1024, fns. omitted.)

As our Supreme Court explained in discussing the *Distefano* and *Wilson* opinions, when the last offer rule applies to previously rejected or deemed withdrawn section 998 offers, it renders such prior offers *inoperable* with respect to the statutory benefits and burdens of section 998. In that regard, although revocation is described as the termination of an "offeree's power of acceptance" (Rest.2d Contracts, § 36), the judicial

application of the last offer rule in the context of section 998 indicates an implied revocation doctrine (such as the last offer rule or the inconsistent actions rule) is not viewed through the lens of terminating the "offeree's power of acceptance"—because, when it applies, it applies to previously rejected or deemed withdrawn section 998 offers (i.e., offers that are no longer open for the offeree's acceptance)—but is instead viewed through the lens of whether the offeror intended to keep the section 998 offer operative for purposes of the benefits and burdens of the statute.

Here, by entering into the settlement agreement, Hyundai took an act inconsistent with an intent to keep the rejected section 998 offer operative. Under the settlement terms, Hyundai agreed plaintiffs could seek their attorney's fees and costs; the settlement does not provide plaintiffs "shall not recover [their] postoffer costs and shall pay [Hyundai's] costs from the time of the offer," as provided in section 998(c)(1). Indeed, Hyundai did not seek costs from plaintiffs. If the last offer rule, a type of indirect revocation, applies to render a previously rejected or deemed withdrawn offer inoperable for purposes of section 998, a subsequent settlement can render a previously unaccepted or withdrawn offer inoperable in the same manner. (See *Varney*, *supra*, 61 Cal.App.5th at pp. 234-236.)[4]

The interpretation that section 998 does not apply to settlement agreements furthers the intent of section 998. "The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' " (*Martinez*, *supra*, 56 Cal.4th at p. 1019.) To determine if an interpretation of section 998 furthers the statute's purpose, courts

---

[4] In *Varney*, the court of appeal applied the implied revocation doctrine to a subsequent settlement agreement. (*Varney*, *supra*, 61 Cal.App.5th at p. 235.) Although the section 998 offer at issue in that case remained pending when the parties entered into the settlement agreement (*id*. at p. 234), the fact is of no consequence because the implied revocation doctrine applies equally to rejected or withdrawn section 998 offers, as explained in *Martinez*, *ante*.

17

consider whether the interpretation "would tend to stifle negotiations and discourage settlement," "whether applying section 998 in a particular manner serves the public policy of compensating the injured party," and "whether the particular application injects uncertainty into the section 998 process." (*Martinez*, at pp. 1020-1021.) Applying section 998(c)(1) to a later settlement would stifle negotiations and discourage settlement, fail to compensate the injured party, and inject uncertainty into the section 998 process.

"[T]he chances of settlement increase with multiple offers." (*Martinez*, *supra*, 56 Cal.4th at p. 1026.) The application of section 998(c)(1) to settlements would discourage a plaintiff who previously rejected a section 998 offer from later making a non-section 998 settlement offer for less than the previously rejected section 998 offer in response to newly discovered evidence or any subsequent change in the law bearing on the plaintiff's injuries or the defendant's culpability. Our Supreme Court explained, "[T]o be consistent with section 998's financial incentives and disincentives, parties should not be penalized for making more than one reasonable [section 998] settlement offer." (*Martinez*, at p. 1026.) The same logic applies to non-section 998 settlement offers, which may ultimately lead to a settlement agreement between the parties. Indeed, "the policy of compensating injured parties is best served by according parties flexibility to adjust their settlement demands in response to newly discovered evidence." (*Martinez*, at p. 1026.)

It is important to recognize that "there is an evolutionary aspect to lawsuits and the law, in fairness, must allow the parties the opportunity to review their respective positions as the lawsuit matures. The litigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial." (*Wilson*, *supra*, 72 Cal.App.4th at p. 390.)

As a point of illustration, consider an existing disagreement among the Courts of Appeal as to whether, in "lemon law cases" such as this one, a vehicle manufacturer is

18

entitled to an offset against the amount of restitution owed to a buyer when the buyer previously sold or traded in the defective vehicle. (*Niedermeier v. FCA US LLC* (2020) 56 Cal.App.5th 1052 [offset required], rev. granted Feb. 10, 2021, S266034; *Figueroa v. FCA US, LLC* (2022) 84 Cal.App.5th 708 [offset not required], rev. granted Feb. 1, 2023, S277547; *Williams v. FCA US LLC* (2023) 88 Cal.App.5th 44, petn. for rev. pending, petn. filed Mar. 13, 2023, S279051 [offset not required].) Under the majority's interpretation, if a plaintiff rejected a reasonable section 998 offer prior to *Niedermeier* and later agreed to settle for a lesser amount because of *Niedermeier*'s interpretation that an offset is allowed, the cost-shifting provision of section 998(c)(1) would necessarily apply to the plaintiff's detriment. The trial court would have no authority to determine whether the settlement was reasonable in light of the change in the law; the trial court's reasonableness determination as to the section 998 offer extends only to what was known or reasonably should have been known *at the time the rejected section 998 offer was made*. (*Whatley-Miller v. Cooper*, *supra*, 212 Cal.App.4th at pp. 1112-1113.) Should the plaintiff be penalized due to a subsequent change in the law? I believe not.

Further, the focus of our de novo statutory interpretation of section 998(c)(1) should not be based solely on the facts of this case or within the context of "lemon law" cases. We must consider the impact of our interpretation on *all* civil cases to which the statute applies, from simple to complex.

Consider for a moment a complex construction defect litigation case. Assume the plaintiffs' primary complaint is water intrusion at and around the windows of their homes. The plaintiffs sue the window manufacturer, the window installer, and all trades that potentially could have contributed to the water intrusion (e.g., framing, stucco, etc.). The parties conduct extensive discovery; they participate in days of visual inspections at the homes, depose the plaintiffs regarding the defects, and depose the persons most knowledgeable for each defendant. The parties attempt to mediate but fail to reach a compromise. The window manufacturer, firmly believing its windows are not defective

19

(based on the discovery and information known) but wanting to avoid further litigation, makes a section 998 offer of $100,000.  The plaintiffs reject the offer to compromise.  The parties later proceed with invasive testing at the homes to prepare for trial.  During the invasive testing, the stucco is removed, and the water spray test reveals most of the windows, in fact, are not defective; the bulk of the cost to repair the water intrusion defects is instead appropriately allocated to the window installer and other trades.  The plaintiffs now, with this knowledge, attempt to settle with the window manufacturer for a fraction of the $100,000 previously offered.  The window manufacturer at this point has spent over $250,000 in postoffer costs to litigate the matter.

Knowing the outcome of the invasive testing, what motivation does the window manufacturer have to settle the case without seeking to recover its postoffer costs under section 998(c)(1)?  Indeed, the window manufacturer knows that, if it proceeded to trial, it would obtain a judgment more favorable than the rejected section 998 offer and the trial court would have no discretion (other than as to the reasonableness of the costs incurred) to reduce the window manufacturer's postoffer costs based on the reasonableness of the plaintiffs' actions under the circumstances.  (Compare section 998(c)(1) [if plaintiff fails to accept the offer and "fails to obtain a more favorable judgment or award, the plaintiff *shall not* recover his or her postoffer costs and *shall* pay the defendant's costs from the time of the offer" (italics added)], with § 998, subd. (d) [if the defendant fails to accept the offer and "fails to obtain a more favorable judgment or award . . . , the court or arbitrator, *in its discretion, may* require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses" (italics added)].)  Should the plaintiffs in this complex construction defect case be punished for failing to accept the $100,000 offer to compromise without having the benefit of the invasive testing information—either by having to pay the window manufacturer's postoffer costs as part of the settlement or being forced to go to trial?  I do not believe section 998's purpose is furthered in this example, and I do not believe we can conceive

20

of all the factual scenarios to which our interpretation may apply given section 998 is a statute of general application in civil cases.

A further concern with the application of section 998(c)(1) to settlement agreements is that it will cause uncertainty. A plaintiff will be encouraged to make settlement offers and negotiate to avoid trial when the plaintiff is without fear that a previously rejected or withdrawn section 998 offer's terms may later be *adjudged* by the court to be less favorable than a previously rejected or withdrawn section 998 offer.

In that vein, settlements, of course, often involve more than monetary terms. In a complex contractual rights case, for example, parties may settle for specific declaratory and injunctive relief instead of a monetary settlement previously offered in a rejected or deemed withdrawn section 998 offer. The statutory interpretation advanced by Hyundai may spawn disputes over whether the ultimate settlement was more or less favorable than the previously rejected or deemed withdrawn section 998 offer—an interpretation that should be avoided. (*Martinez*, *supra*, 56 Cal.4th at p. 1021.) Although trial courts are presently called upon to make such determinations by comparing a rejected section 998 offer to a jury verdict or an arbitration award, the application of section 998(c)(1) to settlement agreements will inject uncertainty into the settlement process and, given that the vast majority of civil cases settle, may substantially increase litigation following settlement. A bright-line rule that section 998 does not apply to settlement agreements, on the other hand, is easily applied and will not confuse the section 998 process or give rise to disputes regarding the favorability of the terms of different settlement agreements compared to previously rejected or withdrawn section 998 offers—saving judicial resources and litigants' time and money. (*Martinez*, at p. 1026.)

Finally, I will note a concern with concluding the section 664.6 settlement is a judgment for purposes of section 998(c)(1), as applied to arbitration proceedings. It bears reminding that section 998 applies equally in judicial and arbitration proceedings, i.e., section 998(c)(1) applies when "the plaintiff fails to obtain a more favorable judgment *or*

21

award." (Italics added.) In arbitration proceedings, an arbitrator issues an award and "a party to the proceedings must petition the court to confirm, correct, or vacate that award." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 908.) Section 1283.4 provides an award "shall be in writing and signed by the arbitrators concurring therein" and "shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." Depending on the language in the arbitration agreement, a party may be required to request section 998 costs from the arbitrator in the first instance. (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358.)

Section 664.6 settlements are available and apply in both judicial and arbitration proceedings. (*In re Marriage of Assemi*, *supra*, 7 Cal.4th at pp. 900-901.) Our Supreme Court has explained that, if the parties make a valid section 664.6 oral stipulation for settlement in an arbitration proceeding, the trial court may enter judgment on the settlement agreement upon motion. (*Id*. at p. 911.)

It is clear from the language of section 1283.4 that an oral section 664.6 settlement does not fall within the meaning of "award." An oral section 664.6 settlement is not in writing and does not constitute a determination by the arbitrator as to an issue in controversy. If the section 664.6 settlement constitutes a judgment, as the majority proposes, how would that work in arbitration proceedings? Would the arbitrator consider the settlement to be a judgment, even without the trial court entering judgment on the settlement agreement upon motion, as discussed in *In re Marriage of Assemi*, and then issue an award solely on the application of section 998(c)(1)? That seems incongruent with the language of section 998(c)(1) and the statutory scheme. It appears to me that the term "judgment" applies in judicial proceedings and the term "award" applies in arbitration proceedings. In other words, it appears the "or" was used in a disjunctive sense to mean "one or the other." (*Los Angeles County-U.S.C. Medical Center v. Superior Court* (1984) 155 Cal.App.3d 454, 461 ["In its ordinary sense, the word 'or'

22

indicates an alternative such as 'either this or that' "].) I believe the interpretation advanced by the majority will inject uncertainty into arbitration proceedings.

In sum, the language of the statute, the legislative history, and the purpose and public policy behind section 998 support the interpretation that section 998(c)(1)'s cost-shifting provision does not apply to settlement agreements.

III

*Hyundai Fails To Establish The Trial Court Abused Its Discretion*

In its opening brief, Hyundai asserts, without any citation to the record, the trial court erred "when it expressly concluded that -- as a matter of law -- it could not *even consider* [Hyundai's] [section] 998 offers when determining whether [plaintiffs'] claimed [attorney] fees were reasonably incurred." Hyundai argues Civil Code section 1794, subdivision (d) requires the trial court to determine the costs and expenses to have been reasonably incurred and, because the lodestar method is used in such determinations, the trial court should have considered Hyundai's prior section 998 offers. (Citing *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 83, *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695.) Hyundai's argument is forfeited because "[s]tatements of fact that are not supported by references to the record are disregarded by the reviewing court." (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947.) Hyundai has thus failed to demonstrate error on appeal.[5]

---

[5]     To the extent Hyundai attempted to cure the deficiency in its reply brief, the new argument should not be considered. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061, fn. 7.)

For the foregoing reasons, I would affirm the trial court's order and award plaintiffs their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (5).)


      ROBIE      , Acting P. J.